With us this morning, the Honorable Kathleen O'Malley, District Judge from the Northern District of Ohio. Welcome. Thank you, Judge. We have five cases on the calendar this morning. Two patent cases from the District Courts, one patent case from the Patent Trademark Office, a claims case from the Court of Federal Claims, and a government employee case from the Merit Systems Protection Board. The latter two are being submitted only on the briefs and therefore will not be argued. So we begin with Ormco Corporation v. Align Tech, 06-1240. Mr. DeBruin. Thank you, Your Honor. May it please the Court. Judgment below in favor of Align should be reversed, in this case remanded, because the Court below determined the scope of Ormco's patents without regard to the claims. This Court... Why would it have to construe the claims if there's a clear disclaimer in the prosecution history of scope? Well, Your Honor, this Court's precedent has been clear that the starting point for any claim construction analysis is the claim language itself and how that would be understood by one of Ormco's... If there's a clear disclaimer? I'm sorry? There are many cases, are there not, where there's a clear disclaimer in the prosecution history and that narrows the scope of the claim? There certainly are. We've never argued that prosecution history or the specification, for that matter, cannot limit or constitute a disclaimer of claims scope. In other words, even if we think that the trial court was correct, we should send it back because of procedural defects? Well, Your Honor, if you apply the correct methodology that this Court has articulated and laid out clearly in the Phillips case, you cannot reach the result that the lower court did. But the issue here is automatic, right? I mean, the question is whether the claims include an automatic system. And the word automatic is all over the specification, and it's in the prosecution history where the patentee or the applicant is distinguishing the prior art. Your Honor, with all due respect, unless you start with the claim language, you don't know what the issue is. Some claims do talk about aspects of the process being automatic. Automatic design of an appliance, for example. What, may I ask, does that have to do with automatically setting up finished positions of teeth? Well, that seems to be arguing about the meaning of the specification in the prosecution history. Let's assume that we conclude that the specification in the prosecution history are absolutely clear and that what was being given up was manual adjustment after the initial input. In other words, that they were saying that our claim is limited, our claims are limited to automatic rearranging of the teeth into a final position. And they're absolutely clear about it, there's no question about it. Are you suggesting that under those circumstances the claims aren't limited to the way they said they were? Your Honor, there are 92 claims at issue here. Most of them have nothing to do... No, you're not answering my question. I'm sorry? I'm giving you a hypothetical. Okay. My hypothetical is it's absolutely clear from the specification and from the prosecution history, they said explicitly, we give this up. We limit this to automatic computer-generated tooth positions after the initial input. That's all we're claiming. It's absolutely clear. Do you lose? Your Honor, if it were absolutely clear and it tied into the claim language... No, no, I'm saying there's no tie into the claim language. Just say we're not claiming this. I think if it's stated unambiguously that regardless of what the claim language is, we are not claiming this, then yes, you've just claimed it. Even assuming that we agree with you that you have to start with the claim language, how do we know that we're not just elevating form over substance if we send this back? I mean, how do we know we wouldn't end up in the same place anyway? Because if you look to the claim language, you cannot end up with the result that the lower court reached. Let me give you an example. Claim 1 of the 444 patent, which is the patent from which most of the asserted claims come. That claim expressly requires the involvement of an operator in determining tooth positions. Now, we can talk about the validity of that claim and is it supported, but that claim is directly at odds with the lower court's ruling that prohibits human involvement even as to evaluation of the claim set up. If you look to Claim 37 of the 444 patent, which we highlight in our response brief, there are two elements to that claim. Scanning in the shapes of a plurality of teeth and then from that, generating data about separate digital representations of the shapes of each of a plurality of teeth. Two claim limitations. If you look to what Align admitted in their response brief, in the briefing before this court, they've admitted that those claim limitations exist. And you don't find anything in that claim that relates to finished tooth positions or even setting up the tooth positions. These patents date back to 1992. Computerization of orthodontics was in its infancy. And it relates to a system of mass producing, customized, individually tailored orthodontic appliances. That is a practice that was unknown in the art at that time. If there's any heart of the invention here, it is the idea that you can automate the process of producing orthodontic appliances that are tailored to the individual anatomy of the patient. Do you draw a distinction between automate and automatically, or do you think they're essentially the same thing? Your Honor, most of the claim language doesn't include the word automatically, but I'm not drawing that distinction here. It's much too fine a point. The point is that the claim language for most of the claims gives you absolutely no reason to even refer to the portions of the specification that talk about how the teeth are set up, or certainly not to refer back all the way to the 562 patent where they're talking about claim limitations that for the most part are not even involved in the asserted claims. Can I ask you a question about enablement? Sure. Unless Judge O'Malley had one of them. No, that's fine. It seems to me that you're correct, that the district court made a mistake here on the enablement by saying that he wasn't going to pay attention to your experts because they weren't corroborated. But I went back and, with the help of my clerk, looked at the testimony of those two experts. It seems to me that they do not help you on the enablement question. In fact, some of the testimony seems to agree that nobody's been successful in coming up with a fully automated system and that it isn't, in fact, perhaps possible to do that. Do those—am I correct about that expert testimony, or does it really support you on enablement? And if so, what testimony supports you on enablement? Well, first of all, Your Honor, again, if the claim construction is reversed, the enablement question, which ties on claim by claim— Yeah, I understand that. Let's assume hypothetically—I know you don't want to assume this—that you lose on the claim construction issue. With regard to the testimony, the most cogent testimony is that, actually, of a videotape that we've submitted to this court in which the inventors are demonstrating a prototype of the process that existed months before the inventions here, the patent applications were filed on the inventions here. And if the goal here is to replace— My understanding is that the testimony about the video is that they used your client's commercial system to treat the patient, which isn't the same as an automatic treatment. Respectfully, Your Honor, the appliances that resulted from that were used. The issue in the testimony was whether the operator looked at the tooth setup and tweaked it before it went into the pump appliance manufacturing mill. And because the court below said you can't have any human oversight or involvement in this process, that was deemed not enabling. But the testimony of the inventors was clear here that they tested the appliances that were manufactured through this system in clinical trials. But I wasn't able to find any testimony that anybody developed an automatic system or treated anybody using an automatic system. Can you show me where it says that? Your Honor, I'll try to find that testimony. My time is up for this portion. But I would point out, enablement is a defense on which the challenger has the burden of proof, not the patent holder. We are entitled to an assumption of validity. And the other side has to come forward with evidence that one of ordinary skill, reading the specification, could not make what is disclosed in that specification. Well, your problem is, though, that under Enzo's case and other cases, the failure to ever do this is evidence of lack of enablement. And one of your own experts testified that he thought maybe it wasn't possible ever to do this. That's evidence of lack of enablement, isn't it? Respectfully, sir, that was, I believe, testimony from one of the inventors. And the question put to him was whether you could ever do this without any human involvement. And because that was never the invention, the intent of the invention, where I'm trying to displace the orthodontist, or never the intention of the invention, he said, quite candidly, I'm not sure if that could be done. We'll save the remainder of your time, Mr. DeVern. Thank you, Your Honor. Ms. Swagoski. Good morning, Your Honors. May it please the Court. Warco's patents cover an invention that simply did not work. The testimony Your Honors were just referring to did come from the inventor, Dr. Andreaco. He was asked whether the positions of the teeth could be automatically determined without any sort of manual override operations. And he answered, or he was asked, why aren't you there now? Why haven't you done this yet? He said, there are too many variations in human anatomy. Sounds like you're addressing enablement. We're addressing enablement, yes. Don't you want to address the, defend the decision of the trial court on construction of claims which weren't construed? Absolutely. And which don't contain the word automatic? Doesn't your enablement depend on the first point being correct? One of our enablement arguments does depend on automatic determination. But other enablement arguments do not depend on automatic determination. We've made the argument that the written description is directed solely to wiring bracket appliances. There is nothing that teaches how to make an appliance, whether automatic or not, that is, for example, a plastic shell. Like Nonhum made in 1964. But the problem is you don't have any claim construction, so we don't know whether or not the claims as actually asserted have anything to do with the products at issue. We do have a claim construction from the district court. In fact, the district court did start with the claims. The district court, in the order from the court, started out by noting most of the claims required automatic determination of two positions. No, the district court specifically said in a footnote, did it not, that he was not construing any claims? And all he was doing was essentially saying that the specification means the invention requires automatic? I mean, he said, I don't construe the claims. But he did go through the methodology that generally is followed under Phillips. He looked first at the claim language. He looked at the specification. Where did he look at the claim language? Show me in the opinion where he looked at the claim language. At A00108, he quoted Renishaw. Claim construction begins and ends in all cases with the actual words of the claim. Right, so what words of the claim did he look at? But he concluded that solely by looking at the spec. He didn't look at any claim language. So tell me what claim language uses the word automatically. That actually used automatic or derive or calculate. In fairness, there's not one place in any of these opinions where the trial judge actually said the claim says X or the claim says Y. Isn't that right? Without ever looking at any particular word or any particular claim. I don't believe we can say that. We don't know exactly what process he followed. He's not required to put in his order exactly what process he followed. He did include in the order his opinion that there was a disclaimer in this case. In Phillips, the court told us you cannot read the claims outside the context of the specification. But did Phillips say you could ignore the claims and only look at the specification? I don't believe that's what the court did here. All right, so you think his footnote's meaningless where he said I don't construe any of the claims? I think he told the parties that all of these claims, in view of the disclaimer, have to be directed in some sense to automation. He was not required then to find every particular claim term to determine whether there could be another non-infringement basis or another basis for non-enablement. All he had to find was one basis for non-infringement, and he found that. This could not be a better textbook example of a disclaimer in this case. Yeah, but the question is, does he have to look to the claim language? There are some cases that seem to say that he doesn't have to look to the claim language. Do you agree that he doesn't have to look to the claim language, or do you think that he does have to look to the claim language? In general, I believe the courts looked to the claim language first. I do believe the court looked at the claim language here and found that. Suppose we reject that. Are there not cases that say you don't have to look to the claim language? I believe there are, Your Honor. I believe that the courts tell you, this court has told us, you cannot read the claims separate from the specification. In any case, if the court did not look at the claims, or let's say the court found that it did not require automatic determination, every single one of those claims would be invalid under Section 112 for violating the written description requirement. There has to be some tether between the claims and the specification. If we take the 444 claims, which were drafted after Invisalign came out, and were clearly drafted to try to cover Invisalign, they bear no relation to the specification if you take out that automation. We are elevating form over substance if we have to go back to the district court and take claim by claim, every claim term that draws in automatic. We're not talking about preferred embodiments here. The entire invention was automated design and manufacture of appliances. Isn't it true, though, that several of the claims actually talk about operator involvement? How do you read out of a claim a specific limitation, an express limitation? The claims that specifically mention operators either mention operator in the context of inputting data, which is supported by the specification, not in designing the actual orthodontic appliance, or to the extent it does mention an operator designing the orthodontic appliance, it finds absolutely no support in the specification. So it is invalid. In either case, Align cannot infringe any valid claim in any four of these patents. Which are the ones that talk about operator involvement in the design? I believe the only one is the one my opposing counsel referred to, claim one of the 444 patents. What language requires operator involvement in the design? Claim one refers in the third subparagraph that through an operator interacting with a computer located remote from the orthodontic practitioner, altering the graphic representation to arrange a plurality of the teeth in relation to each other. To the extent that means that the operator is actually moving the teeth, there is nothing in the specification to support that. So you're saying that we should assume that the district judge backed into this the wrong way, but we should figure out a way to say that what he did ultimately was correct? Again, I don't believe that the judge backed into it the wrong way. I do believe the judge followed the correct methodology. I just believe he did not set it all forth in the opinion. I think there are indications that he followed the proper methodology, but I do believe that to the extent there was any error in the methodology, that error is harmless. Going back to the enablement question, whether automatic design is required or not, these claims are not enabled. The inventor himself admitted that not a single patient was treated with an orthodontic appliance that was designed fully automatically. On the other hand, if automatic determination... Does the patient have to be treated, or do they have to be able to design it? Doesn't the video show that they could have been treated? The video does not show that the positions shown on that screen were automatically determined. We have no idea how they were determined. We see a picture of an arch, and we see a picture of what appear to be lines along that arch that represent teeth, but the video does not tell us how it was arrived at. All right, well, what about the underlying question? Do they have to prove that a patient was actually treated with the invention, or do they have to prove that the patent teaches the invention and it is capable of being practiced? They have to show that the specification teaches one of ordinary skill in the art how to make and use the invention without undue experimentation. It took the inventor 15 years to get where he was able to get, and he did not automatically determine any treatment positions. In fact, he said he did not know if it was possible. You're saying that's undue experimentation? Yes, I am, Your Honor. Even if automatic determination is not required, there is no utility here. The patent makes very clear they do not consider initial treatment positions. They come up with an ideal final tooth position, but how the teeth get from the initial to the final is not taught. Teeth can be rotated. Teeth can have to move in different paths. You have collisions of teeth. You cannot just specify a final tooth position without the path of how the teeth get from the initial to the final. Yet that is precisely what they've done here. They do not teach that. It is another non-enablement position. If I could turn briefly to a lines counter or cross appeal. Here there are a couple issues I'd like to address. If we assume that this panel cannot change the original Oramco decision, what argument do you have left? Your Honor, there are dependent claims here that should be found valid in view of this Court's prior opinion. For example, Claims 2 and 12 require polymeric appliances where the cavities have the geometry that are moving the teeth. Isn't that the same language that's involved in some of the claims that we addressed in the original appeal? It is similar language, and with all due respect, Your Honor, we believe that the law of the case is not applicable. Yeah, but that's asking us to overrule our earlier decision. What I ask you is, assuming that the original decision sticks and that this panel cannot re-examine it, what's left? So assume it is law of the case. Do you have any arguments? Based on this Court's prior opinion with respect to Claim 3 of the 611 patent, which was at issue in that appeal, this Court found that Dr. Truax's devices have cavities with a geometry that does not change with respect to any of those cavities. Claim 3 and Claim 13 of Alliance 548 patent requires that there be some difference. It states that tooth positions defined by the cavities differ by no more than 2 millimeters. There has to be some difference. The Court's prior decision found there was no difference between the tooth cavity geometries in the Truax appliances. Using that, then... Of course, if it says by no more than, it could mean a zero difference. Why are you saying it requires a difference? With all due respect, Your Honor, I do not believe that could be the interpretation because the claim term specifically uses the word differ. It says by no more than 2 millimeters, but it requires a difference. The plain language of the claim requires a difference between the geometry in the different appliances. And didn't Judge Dyke find that the geometry differs with Truax because of the width of the piece, the device? The overall appliances, but the specific cavity geometry was not addressed in that respect. It was found to be the same. In fact, it has to be the same. All three appliances are made on the same model. The inside of the appliances, regardless of the thickness in this case, if we take that out and don't address that for Claim 1 and Claim 11 here, if we just focus on Claim 2 and Claim 3, we're looking at the cavity geometry. Okay, so Claims 2 and 3 of what, the 611? Of the 548. 548, okay. And 12 and 13 of the 548. They all have, 2 and 12 have the same polymeric shell requirement. Claims 3 and 13 have the difference in cavity geometry. Okay, do you have any other argument as to why the original decision doesn't govern here? We believe, Your Honor, that this is an exception to the law of the case. I have to part from that, assuming it is law of the case. Is that it? That is it. Okay, thank you. I would like to address the disclaimer issue just briefly. Oremco has made the point that we are relying on prosecution history from the 562 patent, which is not an issue here. In fact, we're relying on specific language about the invention in the specification, in each specification at issue in this case. The specification of all of the patents in suit is identical to that of the 562 patent. The prosecution history related to the 562 patent, we believe, is relevant to the disclaimer issue here because we're talking about the exact same language and because the statements that we've identified refer to the invention or the invention described in the patent application, not a preferred embodiment, not specific statements made solely to one claim. But this goes back to the other issue, and that is, isn't this court's law pretty clear that you only look to patents not in suit if it's necessary to inform the interpretation of claim language? Again, I don't know that we need to even get to the prosecution history because the specification is so clear. And I do see that my time has come to an end. Well, you can answer the question. We do believe that the claim language, though it may drive the claim construction process, must be read in view of the specification. Phillips is very clear that we cannot read the claims divorced from the specification. If we do so here, then it may not require automation, but the claims are not valid. In either case, a line submits, the district court opinion should be affirmed. Thank you, Ms. Swigalski. Mr. DeBruin has a little time left. Thank you, Your Honor. In Phillips, this court ruled en banc that the bedrock principle of claim construction is you start with the claims and you look at how a person of ordinary skill would understand those claims. The court below failed to do this. Contrary to what Ms. Swigalski said, the court- Well, the court looked at the claims clearly. I mean, the claims, the court knew what the claims were referring to even though it didn't find the word automatic in the claims. Well, Your Honor, the appendix that is attached to the decision wasn't in fact even submitted until the reply brief of the line below. There was no starting with the claim language here asking what would one of ordinary skill interpret this language to be. If the court did that- But I thought you agreed earlier that under our cases that you don't have to find the disclaimer in the claim language if it's explicit in the specification of the prosecution history. And so the question under that view of it becomes, was it explicit? Isn't it pretty explicit here? What's lacking? No, Your Honor, it's not explicit. First of all, the specification, if you look at the two portions that the lower court cited in its opinion, the first one begins that in a preferred embodiment this court's decisions are clear. That is not limiting language. The second quote from the district court opinion talks about automatic design of the appliance, automatic design and manufacture. That says nothing about how you arrive at the setup that you want to achieve as the end result of using the appliance. You could bring a manually constructed wax-in model of the teeth in their finished positions that was set by hand, scan that in, and automatically design the appliance. There's nothing that prohibits you from doing that. And in fact, some of the claims involved in this case are directed exactly to that. So this attempt to say that the specification or the history is making clear that the heart of the invention was something about how you set up the teeth in their final positions. Hogwash. The heart of this invention was how do you mass-produce appliances that are customized to the individual anatomy of the patient. That had not been done before, and what these patents disclose is a system, an entire complex system going from patient diagnosis to manufacture of the appliance and address how do you do that at each step of the way. The result is there's not one invention here. There's many inventions. Some of them do relate to how do you set up the teeth in their finished positions. But that's one aspect, and most a leg, not the heart of the invention here. So, Your Honor, in response to your question about if the specification made it unambiguously clear, all I can say is this court has never been confronted with that situation. Sure, that's the Paul case is one example. There are several others. I'm sorry, which one? The Paul case. The Paul case. Yeah. Okay. It wasn't cited in the brief, so I'm... But you're representing there's no case. There are cases. Okay. I didn't find it. My apologies. In any event, the decisions that were cited in the brief and that I at least had the opportunity to review always seem to tie it into the claim language. And if there is a general doctrine of disclaimer where it's unambiguous in the specification, fine. But that's not this case. With regard to the court's question on the enablement, I went back. It looks like we did not include a site to a particular part of the record that disclosed the 80 to 100 patients that were treated with prototype devices, but we did refer to Dr. Scott's declaration where he stated that he treated 35 patients with the appliances. But I would note that the treatment is not part of this. But he didn't say it was automatic. I'm sorry? He didn't say it was automatic. Well, he stated that they were appliances made with the prototype of the invention disclosed in the document. But there's no testimony that the prototype was automatic, was there? Well, that gets into the question of, well, actually, yes, there was. Where? If you look at the testimony about the prototype, not about the insignia, which is the portion that Ms. Rogasky cited, the inventors testified that they did make appliances that were automatically generated. Where? Where did they say? Your Honor, I couldn't put my finger on that testimony in the time I'm out here. Your time is up, Mr. DeBruin. We thank you both for giving us something to chew on, something that we can get our teeth into, and we'll take the case under advisement.